The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Richard Ford. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as follows:
 FINDINGS OF FACT
1. Annie Cates was born 14 October 1931, and is currently 67 years old; worked for National Spinning from 1963 until she retired because of pulmonary disability on 7 June 1989.
2. Ms. Cates had no history of asthma, and her smoking history consisted of having smoked one-half pack or so for four or five years in the 1950's. She worked in the plant as a spinner until about 1986, when she became a "roll picker".
3. In her work, Mrs. Cates was exposed to a great deal of dust and lint from the yarn on the spinning machines, including cotton yarns in the early years. She was not able to identify the types of synthetic yarns processed in the plant, but the MSDS sheets produced by the defendant after the hearing before the Deputy Commissioner identify several types of synthetic yarns.
4. Plaintiff also described a number of chemicals that were used in the plant during her employment period. These included solvents, shellacs, glues, air conditioning additives that had a "Rotten-egg" smell, and others she could not name. The MSDS produced for air-conditioning additives (which were used to treat corrosion in the machinery) show that several are known to be irritating or "severely irritating" to the respiratory tract. Among these are Chemtreat CT-23 and Chemtreat CL-1420.
5. Mrs. Cates had no history of asthma or other significant breathing problems and she first went to a doctor because of shortness of breath in January 1989, when her daughter insisted that she go to the family doctor because of concern that she might have a heart problem. At that time she had been having trouble breathing for some period of time.
6. Plaintiff subsequently went to Dr. Donald Tucker, a heart specialist, who referred her to Dr. Robert Shaw, a pulmonary specialist, after concluding that her problem involved her lungs, not her heart.
7. Dr. Shaw ran some tests, and then took plaintiff out of work on account of her pulmonary condition, on 7 June 1989. Plaintiff has not worked since that time and her symptoms of shortness of breath have affected her ability to engage in most activities, including sleeping, walking, doing housework, and any type of extertion.
8. The plaintiff went only as far as the beginning of the 9th grade in school and has never done any kind of work except mill work, which she is no longer able to perform because of her pulmonary condition. Since leaving the plant, she has severely limited her activities and is considered disabled by all of the doctors who have seen her.
9. Dr. Robert Shaw, a board-certified pulmonologist, has been practicing in Greenville for more than 20 years. He began treating plaintiff in 1989. Dr. Shaw's experience has included treating patients with occupational exposures to dust and fume exposure, as well as teaching on the medical school faculty at ECU.
10. Dr. Shaw first saw Mrs. Cates in May 1989 at which time he took a history from her regarding her occupational exposures and medical history, and recorded that plaintiff had exposure to fibers and dusts from making yarn. The plaintiff told him she had respiratory symptoms beginning about a year earlier that had worsened.
11. Dr. Shaw initially diagnosed asthma and possible byssinosis and gave the plaintiff a peak flow meter to record her lung function after work on the days that she was exposed. The peak flow meter showed that her breathing was worse in the evenings on days that she worked and did not show a drop on days she was off. Full pulmonary function testing showed severe abnormality.
12. Dr. Shaw has diagnosed plaintiff with chronic obstructive airways disease, which the Full Commission finds was caused by the conditions in her job at the national Spinning Plant. Among determinative factors considered were: (1) the absence of other possible causative factors, (2) the fact that plaintiff's breathing ability declined on the days that she worked, and (3) on the fact that she was in an occupation where there was a likelihood of cotton dust and possibly other chemicals that are known to induce obstructive airways disease.
13. The Full Commission also finds that plaintiff's lung disease is a significant factor in causing her to be permanently disabled from working in a textile mill. Plaintiff's exposures to these substances at National Spinning increased her risk of developing chronic obstructive pulmonary disease over the public generally.
14. Plaintiff saw Dr. Stopford on her own in March 1992. Dr. Stopford examined the plaintiff, reviewed the records of Dr. Shaw, the medical records from the plant, Dr. Hayes' report, Dr. Tucker's records, the extensive stack of MSDS, and the transcript of the 1990 hearing in this case. He wrote a comprehensive report, which contains an occupational history of plaintiff's work at defendant's plant that was entirely consistent with the evidence on the exposure history plaintiff testified to at the hearing.
15. Dr. Stopford is a Harvard-trained physician with board certification in Preventive Medicine, Occupational Medicine and Internal Medicine, as well as a degree in Industrial Hygiene. He examined plaintiff and conducted an extensive review of the evidence of exposure, including a review of the transcript of lay testimony, analysis of the massive quantity of material safety data sheets (MSDS) from the plant, and a thorough search of the medical literature pertaining to the plaintiff's exposures.
16. Dr. Stopford also concluded that Ms. Cates' lung disease was caused by her work at National Spinning. His impression was that her "chronic obstructive diseases were more likely than not related to her workplace exposures." He said:
 She did have exposures to a number of chemicals or dusts that have been associated with an increased risk of acute or persistent lung disease. She did have work-related symptoms associated with exposure to these irritating dusts and fumes. She does have evidence of bronchospastic lung disease, and I do not have an alternate explanation for her bronchospastic lung disease.
17. Dr. Stopford identified five reasons for his conclusions. They were (1) the lack of prior symptoms, (2) work-related symptoms, (3) the MSDS showing irritating chemicals, (4) the known relationship between such irritants and airways disease and (5) the known association between synthetic fiber dust and airways disease. Based on those factors, Dr. Stopford testified that the combination of exposures were a significant contributing factor to plaintiff's respiratory condition, and that the exposures placed her at increased risk of developing his lung condition over members of the general public.
18. In January 1990, upon the referral of defendants in this case, plaintiff was examined by Dr. Allen Hayes, of Raleigh Internal Medicine. The history taken by Dr. Hayes from Ms. Cates was consistent with her testimony and the medical records.
19. Dr. Hayes diagnosed plaintiff as having moderately severe obstructive lung disease and said that she could have occupational asthma. For the reasons discussed above, the evaluation by Dr. Hayes is not found by the Commission to have been as thorough or based on as large a quantity of accurate information as those conducted by Dr. Stopford and Dr. Shaw. Nonetheless, Dr. Hayes was not able to "rule out" some contribution by her occupational exposures. Dr. Hayes, however, did believe that while the plaintiff is theoretically able to work in an "environmentally clean" area, he did not believe she had the educational or vocational skills to acquire such employment. His testimony is given less weight than the other expert opinions rendered in this case.
20. The Commission accords significant weight to the opinions of Dr. Robert Shaw, the treating pulmonologist, who had contact with the plaintiff contemporaneous to her exposures. Dr. Shaw's interpretation of the peak flow tests is given greater weight than that of Dr. Hayes, because he ordered the tests and because he treated the plaintiff over a long period of time.
21. In addition, the Commission gives great weight to the testimony of Dr. Stopford, because of his education and training in toxic exposures, his comprehensive research and analysis of the case based on his review of the extensive documentation of the plaintiff's hazardous exposures, and in light of the fact that Dr. Hayes had not done such a study.
22. The workplace conditions described in the testimony and the MSDS subjected plaintiff to a greater risk of contracting chronic obstructive pulmonary disease and a greater risk of contracting occupational asthma than members of the general public not so exposed.
23. At the October 1990 hearing, plaintiff reviewed her occupational history; symptoms and doctors' treatments after she began having trouble breathing. In all important respects, the Commission finds that plaintiff's testimony was consistent with her medical records, and with the testimony of her treating physicians and Dr. Stopford.
24. The plaintiff, Annie Cates, has chronic obstructive lung disease as a result of her exposures to dusts and chemicals in her employment at the defendant's mill.
25. The plaintiff is unable to earn any wages as a result primarily of her lung disease.
26. Plaintiff's weekly wage was $278.51, which yields a compensation rate of $185.68.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff suffers from an occupational disease resulting from her employment at National Spinning Company. Her working conditions placed her at a greater risk of contracting this disease than members of the public generally. N.C. Gen. Stat. § 97-29.
2. Plaintiff is entitled to compensation at a rate of $185.68 per week from 7 June 1989 and continuing so long as she remains totally disabled. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to medical treatment to the extent the same is reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with her occupational disease. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay plaintiff, on account of her continuing and total disability, compensation at the rate of $185.68 per week from 7 June 1989 to the scheduled hearing date and thereafter, continuing at the same rate so long as she remains totally disabled.
2. Defendants shall pay interest at 8% per annum on the amount of such compensation as has accrued from the date of the first hearing ( i.e., 26 July 1990) until paid. All interest is payable to the Plaintiff.
3. To the extent the same are reasonably designed to tend to effect a cure, provide needed relief from and/or lessen the period of disability associated with Plaintiff's occupational disease, defendant shall pay all reasonable and necessary medical expenses incurred as a result of the occupational disease when bills for the same are submitted in accordance with the Industrial Commission Rules.
4. A reasonable attorney fee in the amount of twenty-five (25) percent of the accrued compensation benefits due under the above award is hereby approved for plaintiff's counsel, which shall be deducted from the award and forwarded directly thereto. For the balance of the attorneys fee defendant shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
5. Defendant shall bear the costs, including as part thereof, expert witness fees for the testifying witnesses, to the extent that they have yet to be paid, when the same have been submitted to the Commission and the amount of the fee set.
This the 27th day of October 1998.
 S/ _______________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING:
S/ _____________________ DIANNE C. SELLERS COMMISSIONER